## Petition of GULF TELEPHONE COMPANY.
### No. 6306-TP.

Railroad & Public Utilities Commission.
August 16, 1961.

W. T. Davis, Madison, and J. Velma Keen and Charles H. Spitz, both of Tallahassee, for petitioner.

Chairman WILBUR C. KING, Commissioners JERRY W. CARTER and EDWIN L. MASON each participated in the disposition of this matter.

BY THE COMMISSION.

Gulf Telephone Company, a corporation under the laws of the state of Florida, furnishing telephone service in the city of Perry and portions of Taylor County, has filed with this commission a petition seeking authority to increase its intrastate exchange telephone rates by such amounts as may be necessary to enable it to

earn a return of 8% per annum on the value of its property used and useful in serving the public.

The commission held two public hearings on this matter. The first hearing was held in the city of Perry commencing on March 6, 1961. The second was held in the city of Tallahassee and commenced on March 30, 1961. No one appeared at either hearing in opposition to the requested increases although the specific rates requested by the telephone company would have been extremely high — considerably higher, in fact, than any other telephone rates in the state. This may be explained by the fact that Perry has been plagued for many years with very inadequate telephone service and facilities and the present request for increased rates is necessitated by the installation of an almost entirely new telephone plant and conversion to automatic dial operation.

In order to adequately meet the needs of subscribers at the present time and in the foreseeable future, it has become necessary for Gulf Telephone Company to engage in an expansion and modernization program which has required the expenditure of large sums of money. The telephone company has purchased from North Electric Company a modern dial system and adequate equipment to operate the same at a price of approximately $350,-000. Because the telephone company in question is small and unable to secure adequate financing for its expansion program, North Electric Company agreed to sell it the above mentioned dial equipment and finance the same at an interest rate of 6% over a period of twelve years. The equipment has been installed and is ready to be placed in service as soon as rates for the new dial service have been fixed by this commission.

We do not ordinarily favor or permit the use of pro forma investment and income statements in rate cases. However, in a case such as this, where we are dealing with an almost entirely new operation with a new and different plant, it is necessary to give consideration to the proposed operation rather than the present one which is being discontinued. Statistical data based upon the operation of an obsolete manual system can be of little help in determining the earnings requirement of the same company when it converts to a modern dial system. In the present case, we have permitted the use of such pro forma data.

During the hearings in this case the telephone company advised the commission that it had an application for a loan pending before the Rural Electrification Administration which, if granted, would greatly reduce its fixed charges. Since the hearing, we have been advised that the application is progressing favorably and likely will be consummated in the near future.

Such financing appears to be the only salvation for this company because its cost of money will be so high under other available forms of financing that its rates for telephone service will be exorbitant.

We recognize that the company must have some rate relief. We also recognize that the public which is served by this telephone company must have some material improvement in telephone service. The modern dial system is now ready to be placed in service. Taking these situations into consideration, we do not feel that we can withhold the fixing of rates for the new dial operation until the REA loan has been consummated. However, it is our intention to fix rates only of a temporary nature at this time so that the cutover to dial can be made, and the telephone service improved. When the REA loan has been completed, we will then review the situation and make such adjustments in the company's rates as may be justified at that time.

In view of the conclusions we have reached concerning the fixing of temporary rates in this proceeding, and deferring the entry of a final decision in this matter, we will not at this time go into a detailed discussion of the company's rate base and the rate of return to which it would be entitled. There will not be a great deal of difference in the rate base which we will approve and the one proposed by the utility. There will be, however, some substantial difference in the earnings under our calculations and the earnings estimated by the company. This is due to several instances where we are not in agreement with the company's treatment of certain items of expense. We will not allow the salary increases for the two top officials of the company for rate making purposes. While we feel that the fixing of salaries is a prerogative of management, we will not permit unreasonable increases where the resulting rates to the public are exorbitant. Further, the company has given no consideration to the income tax payment lag. Our treatment of this reduces the rate base and, therefore, the earnings required. There are other items which we will discuss in detail when we have reached a final decision in this matter.

As a temporary measure, we will approve rates and charges as shown on Appendix A, hereto attached, and made a part of this order. Said rates should become effective immediately upon conversion to dial operations and continue until such time as this commission has entered a final decision in this matter fixing permanent rates for Gulf Telephone Company.

Based upon the entire record herein, the commission finds that Gulf Telephone Company is entitled to increase its rates and charges for intrastate exchange telephone service on a temporary

basis until a final decision is entered herein; and that the rates and charges shown on Appendix A, hereto attached and made a part hereof, will be fair and reasonable as temporary rates for said telephone company to charge its subscribers in its service area until permanent rates are fixed herein by the commission.

The commission further finds that Gulf Telephone Company should forthwith cut its new dial plant into service and should make every effort to accelerate the final consummation of the REA Loan, which it is now seeking.

It is therefore ordered that Gulf Telephone Company is authorized to put into effect, as soon as its dial operation begins, the rates and charges shown on Appendix A, hereto attached, and made a part of this order as temporary rates until the commission enters a final decision in this matter fixing permanent rates for said utility.

It is further ordered that Gulf Telephone Company cut its new dial system into service without unreasonable delay and that the company keep the commission advised concerning the status and developments in its application for an REA Loan, so that the commission may review this proceeding when said loan has been consummated and fix permanent rates for said utility in the light of its needs at that time.

## APPENDIX A

### COMMISSION APPROVED RATES

| Item | | Rates |
|---|---|---|
| Business: | 1-Party | $11.50 |
| | 2-Party | 10.00 |
| | 4-Party | 8.50 |
| | Extensions | 2.25 |
| | Rural Multi-Party | 6.75 |
| Coin Guaranteed Pay Stations | | 23.63 |
| Residence: | 1-Party | 6.50 |
| | 2-Party | 5.50 |
| | 4-Party | 4.00 |
| | Extensions | 2.00 |
| | Rural Multi-Party | 4.00 |
| PBX Trunks | | 23.63 |
| PBX Extensions | | 2.25 |
| PBX Hotel and Hospital Extensions | | 2.25 |
| Rentals: | Industrial PBX | 59.83 |
| | 10-Line Cordless | 10.75 |
| | 20-Line Cordless | 15.50 |
| | 0-30 Line Cord | 17.25 |
| | 31-60 Line Cord | 22.75 |
| | 61-100 Line Cord | 27.25 |